# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PLUMBERS LOCAL 98 DEFINED BENEFIT
PENSION FUND, *et al.*,

                Plaintiffs,          No. 06-CV-12065

vs.                                          Hon. Gerald E. Rosen

M & P MASTER PLUMBERS OF
MICHIGAN, INCORPORATED and
MATTHEW M. PANKNIN,

                Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

    At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       April 14, 2009

PRESENT:   Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

## I. INTRODUCTION

This ERISA contribution action is presently before the Court on the post-audit Motion for Summary Judgment filed by Plaintiffs Plumbers Local 98 Defined Benefit Pension Fund, Plumbers Local 98 Defined Contribution Fund, Plumbers Local 98 Insurance Fund, Plumbers Local 98 Vacation and Holiday Trust Fund, Plumbers Local 98 Sub Trust Fund, Plumbers Local 98 Retiree Benefit Fund, Joint Administrative Committee of Plumbers and Pipefitters Industry in the Detroit Area, and Metro Detroit

Plumbing Industry Training Trust (collectively the "Funds"), to recover fringe benefit contributions due and owing under a collective bargaining agreement.  This Court previously entered a default judgment against Defendant M & P Master Plumbers of Michigan, Inc., in the amount of $164,166.20.  Defendant Matthew M. Panknin has responded to Plaintiffs' motion and Plaintiffs have replied.

Having reviewed the parties' respective briefs in support of and opposition to the motion, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process.  Accordingly, the Court will decide Plaintiffs' motion "on the briefs."  *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  This opinion and order sets forth the Court's rulings on the motion.

## II.  FACTS

Matthew Panknin is the sole shareholder and officer of M & P Master Plumbers of Michigan, Inc., a plumbing contractor.  In July 2001, Panknin signed a collective bargaining agreement ("CBA") on behalf of M & P with the Metropolitan Detroit Plumbing & Mechanical Contractors Association, the Plumbing, Heating & Cooling Contractors Association of Southeastern Michigan, Inc., and Plumbers' Union Local No. 98 (collectively the "Union").  The agreement is governed by ERISA.  Article VI of the CBA requires Panknin's company to make monthly contributions to the Plaintiff Funds.  The amount of the contribution to each fund is specified in the wage and benefit schedule of the CBA.  Trust agreements for the individual funds are also incorporated into the

CBA.

In his affidavit, Panknin testified that during late 2003 and 2004, several disputes arose between M & P and the Union. During that time, the company suffered financial difficulties. Panknin explained that because the company was struggling to get qualified workers from the Union, it began hiring non-union workers. For the period at issue in this case, the company did not make fringe benefit contributions to the Funds for these workers. Panknin testified that neither he nor the company withheld, collected or were paid by M & P customers the fringe benefit contributions. He further testified that he received little, if any, income from the company, and that the company "did not have the money available to make the employer contributions to the Funds." (Panknin Aff. ¶ 6.)

In July 2006, Plumbers' Union Local 98 requested an audit of M & P, for a period from 2003 to 2006. M & P failed to provide job records beyond basic payroll information to show the type of work employees did for the relevant period. The audit revealed that the company owed payments in excess of $133,000.00.

On November 29, 2006, this Court entered a default judgment against Defendant M & P, in the amount of $ 164,166.20, including the unpaid contributions, interest pursuant to 29 U.S.C. § 1132(g)(2)(B), fees and costs, and liquidated damages. Currently, there remains a due and owing balance of $ 154,708.98. The company is no longer collectible.

Panknin now argues that he cannot be held personally liable for benefit contributions that were never collected, withheld, designated or segregated, and thus,

3

never "diverted" within the meaning of ERISA. Plaintiff Funds counter that contributions that are due and owing become vested plan assets on the date they are due, regardless of whether they are actively "withheld" from employee payments. The Funds allege that Panknin is thus a fiduciary over the delinquent contributions to the Funds pursuant to Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and that he breached his fiduciary duties by not depositing the delinquent contributions into the Funds.

In the alternative, Panknin contests the amount of the default judgment against M & P. He argues that the audit contains errors because certain employees were not engaged in plumbing work covered by the CBA and thus were not entitled to contributions and/or were paid at a lower rate than the rate used in the audit calculations. The Funds argue that Panknin failed to challenge the default judgment when it was entered against his company and that, beyond his affidavit, Panknin provided no additional records to indicate the actual nature of the disputed work.

### III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" dispute is one that would permit a reasonable jury to return a verdict in favor of the non-moving party. Henderson v. Walled Lake Consol. Schs., 469 F.3d 479, 487 (6th Cir. 2006). In considering a motion for summary judgment, the Court must construe all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co. v.

4

Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). The central issue is thus "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505 (1986).

## IV.  ANALYSIS

A. UNPAID CONTRIBUTIONS ARE PLAN ASSETS WHEN THEY BECOME DUE, EVEN IF THEY ARE NOT FORMALLY WITHHELD OR SEGREGATED BY THE EMPLOYER.

Under ERISA, employers are required to make contributions to benefit funds in accordance with the terms and conditions of collective bargaining agreements. See 29 U.S.C. § 1145. Panknin does not contest this obligation; rather, he argues that because he never withheld or designated monies for purposes of making fringe benefit contributions, those funds never became plan assets. Because the unpaid contributions were never plan assets—or indeed, under Panknin's theory, because they never existed in the first place—he argues that he cannot be held personally liable for having diverted them. The critical question is thus at what point unpaid contributions become plan assets, triggering a fiduciary duty to the Funds.

The Sixth Circuit has yet to consider exactly when unpaid benefit contributions become plan assets under ERISA. Nor has any court, seemingly, directly addressed Panknin's novel argument that an employer is only responsible for unpaid contributions when he formally withholds them from employee wages for purposes of making fringe benefit contributions. Both parties cite 29 C.F.R. § 2510.3-102(a), which states:

5

> For purposes of [pertinent sections of ERISA], the assets of the plan include amounts (other than union dues) that a participant or beneficiary *pays to an employer*, or amounts that a participant has *withheld from his wages by an employer, for contributions to the plan* as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

(emphasis added). Panknin argues that the express language of the regulation, as well as reference to "employee withholdings" throughout the relevant case law, indicate that fiduciary duty requires something more than merely delinquent payments.

Judges in this district have repeatedly held that contributions are plan assets as soon as they are *due and owing*. See, e.g., Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc., 352 F. Supp. 2d 794, 805 (E.D. Mich. 2004); Operating Engineers' Local 324 Fringe Benefit Funds v. Nicolas Equipment, LLC, 353 F. Supp. 2d 851, 854 (E.D. Mich. 2004); cf. Trustees of Mich. Regional Council of Carpenters Employee Benefits Fund v. Accura Concrete Walls, Inc., 408 F. Supp. 2d 370, 371 (E.D. Mich. 2005); see also United States v. Grizzle, 933 F.2d 943, 946–48 (11th Cir. 1991), cert. denied, 502 U.S. 897, 112 S. Ct. 271 (1991) (money withheld for deposit into vacation fund was a plan asset); LoPresti v. Terwilliger, 126 F.3d 34, 39 (2nd Cir. 1997) (money withheld from employees' paychecks for deposit into pension fund was a plan asset). This Court reached the same conclusion in a 2006 unpublished opinion, finding that "Department of Labor regulations and federal case law provide that fringe benefit contributions constitute plan assets under ERISA on the date that they are due, such that an individual may be held personally liable for breach of his fiduciary obligations *by not paying these contributions* to their intended beneficiaries." Plumbers Local 98 Defined

6

Benefit Funds v. Controlled Water, Inc., No. 03-CV-72888-DT, 2006 WL 2708544, at *4 (E.D. Mich. Sept. 19, 2006) (emphasis added).[1] Although these decisions do not address whether the employer actually withheld money to contribute to an employee fringe benefit fund, they universally treat delinquent payments to ERISA funds as de facto mismanagement of plan assets.[2]

In McGuire Steel, a group of trust funds sought to recover unpaid fringe benefit contributions from a company, McGuire Steel Erection, Inc., and its president, Dan McGuire, in an ERISA Section 515, 29 U.S.C. § 1145, action. McGuire Steel, 353 F. Supp. 2d at 796-97. Under the terms of collective bargaining agreements, the defendants

---

[1] Panknin seeks to distinguish this Court's reasoning in Controlled Water by pointing out that it deals with the alter ego doctrine. The individual defendant in that case controlled two businesses, set up separately for union and non-union workers, to avoid fringe benefit contributions under a collective bargaining agreement. Controlled Water, 2006 WL 2708544, at *1. Although, as Panknin points out, an "intent to evade" must be established in order to find an alter ego and no such intent has been shown in this case, this does not affect the Court's analysis for purposes of establishing when unpaid contributions are considered plan assets under ERISA. This Court's finding in Controlled Water that "when an employer withholds money from an employee paycheck for deposit into an employee welfare benefit fund, the employer is a fiduciary with respect to this money," id. at *4, is independent of the Court's ruling regarding the alter ego doctrine.

[2] The parties appear to treat "employee withholdings" and "employer contributions" either in combination or interchangeably throughout the briefs. Case law from other circuits tends to apply the same reasoning to delinquent employer contributions as this district applies to diverted or misappropriated employee withholdings. See, e.g., In re Consolidated Welfare Fund ERISA Litigation, 839 F. Supp. 1068, 1073 (S.D.N.Y. 1993); Galgay v. Gangloff, 677 F. Supp. 295, 301 (M.D. Pa. 1987). Accordingly, the Court adopts the reasoning of these cases and analyzes employee withholdings and employer contributions under the common heading of "fringe benefit contributions" throughout this opinion.

7

were obligated to make contributions to the plaintiff funds on the 26th day of each month. Id. at 797. Dan McGuire was fully responsible for the daily operations of the company, including deciding whether to pay benefit contributions to the plaintiff funds. Id. An audit revealed that the defendants owed over $85,000 in unpaid benefit contributions. Id. In order to determine whether McGuire could be held personally liable for the unpaid contributions, the court engaged in a two-step inquiry determining: first, whether the delinquent contributions were plan assets; and second, whether McGuire exercised discretionary control or authority over such assets. Id. at 805.

> Regarding the first question, the McGuire Steel court evaluated two approaches:
>
> Courts in the Third Circuit hold that benefit contributions become plan assets at the moment they are due, so long as the parties have agreed that contributions become plan assets when due. See e.g., Galgay v. Gangloff, 677 F. Supp. 295 (M.D. Pa. 1987), aff'd, 932 F.2d 959 (3d Cir. 1991) (delinquent contributions held to be plan assets pursuant to the terms of a wage agreement); Trustees of the National Elevator Indust. Pension, Health Benefit & Educational Funds v. Lutyk, 140 F. Supp. 2d 447, 455 (E.D. Pa. 2001) (finding no language in the benefit plan sufficient to make unpaid employer contributions trust assets). Other courts, however, hold that unpaid benefit contributions become plan assets when the contributions become due, regardless of the language of the benefit plan. See, e.g., Board of Trustees of the Airconditioning & Refrigeration Indust. Health & Welfare Trust Fund v. J.R.D. Mechanical Services, Inc., 99 F. Supp. 2d. 1115, 1120 n. 4 (C.D. Cal. 1999) (finding that both employer contributions and employee wage deductions are plan assets, regardless of the language of benefit plan documents or whether the funds are ever conveyed to the plan); United States v. Grizzle, 933 F.2d 943, 947 (11th Cir. 1991) (finding liability under an analogous criminal statute where the employer exercised control over employee contributions deducted from employee wages).

Id. The court then concluded that under either approach, McGuire was personally liable for failure to make multi-employer trust fund contributions. Id. Without addressing

whether the president had actually withheld monies for purposes of these contributions, the court held that under the terms of the benefit fund agreement, the unpaid benefit contributions became plan assets when the contributions became due. Id. So long as the company was operating, the court deduced that McGuire was misusing delinquent contributions to cover operating costs, in violation of his contractual obligations:

> Defendant [Dan] McGuire has admitted to running the day-to-day operations of Defendant McGuire Steel, including being responsible for decisions to pay contributions. In addition he has not challenged Plaintiffs' assertion that Defendant McGuire Steel continued to operate despite monthly shortfalls in benefit contributions, which leads to *the inescapable conclusion that the company was being financed with plan assets*.

Id. at 806 (emphasis added).

Similarly, in Nicolas Equipment, the court did not consider whether the defendant company president actively withheld funds from employee paychecks when it determined that he was personally liable for unpaid contributions. Nicolas Equipment, 353 F. Supp. 2d at 854-55. In that case, jointly-administered trust funds sought to recover unpaid contributions from Nicolas Equipment L.L.C. and Richard Schofield, the company's chief officer. Id. at 852. Because Schofield failed to respond to the plaintiff funds' requests to admit, the court found that he had effectively admitted to using money received by the company for purposes other than paying required fringe benefit contributions to the plaintiff funds. Id. at 854. Citing Southern Electrical Health Fund v. Kelley, 308 F. Supp. 2d 847, 867 n. 10 (M.D. Tenn. 2003), the court found that these delinquent contributions constituted plan assets as they became due. Id. Rather than evaluate

9

whether Schofield had formally withheld monies, the court found that the combined admissions of having exercised control over company receivables during the audited period, and having made decisions as to whether the company should pay fringe benefit contributions, were sufficient to show that Schofield personally exercised discretionary control over funds "designated for deposit." See id.

Ultimately, Panknin's argument for lack of personal liability—that because money was never collected for purposes of paying fringe benefit contributions, no employee contributions were "withheld" or misappropriated as a matter of law—does not overcome the principle that unpaid contributions become plan assets when due. Panknin has cited no case law, and this Court has found none, in which the courts excused unpaid contributions on this formalistic basis. Moreover, the CBA and trust agreements in this case simply do not contemplate Panknin's excuse; rather, by their terms, they set out a clear obligation to make contributions on a monthly basis and to treat these unpaid contributions as inalienable plan assets. Specifically, the CBA states that M & P "shall make contributions to the following funds each month to the designated depository for the prior month as provided in the applicable Trust Agreements." (Pls.' Mot. for Summ. J. Ex. E, p. 11.) Separately, Article VIII of the trust agreement for the defined benefit plan states: "The corpus or income of the trust may not be diverted to or used for other than the exclusive benefit of the participants or their beneficiaries." (Pls.' Mot. for Summ. J. Ex. F, ¶ 8.2.) Article IX of the agreement further states: "No benefit payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment,

pledge, attachment or encumbrance of any kind." (Id. at ¶ 9.1.)  The special duties imposed by ERISA, federal regulations, the CBA and the trust agreements suggest that monies *not paid* to employees, but required by contract to be set aside for contribution to the Funds, are plan assets entrusted to the employer, to be accounted for by him until such time as they are remitted to the Funds.  There is no basis for permitting Panknin to refute these contractual and statutory obligations merely by claiming financial difficulty or even incomplete record-keeping, as he has essentially claimed here.

      Finally, the record indicates that the company continued to operate during the audit period and that, by inference, funds from M & P's general assets were used to cover operating costs.  Although the parties have presented no evidence of withholding from employee paychecks, the Court is constrained to conclude that by paying his employees less than the amount set out in the CBA for the relevant period, while continuing to pay operating costs for the company, Panknin functionally "withheld" unpaid wages and fringe benefit contributions in violation of his contractual obligations.  See In re Lexington Healthcare Group, Inc., 335 B.R. 570, 576 (Bankr. D. Del. 2005) ("If the employer does not pay the gross wages to the employees . . . , then clearly some portion of the employees' wages have been 'withheld.' "); In re U.S. LAN Svs. Corp., 235 B.R. 847, 856 (Bankr. E.D. Va. 1998) ("[T]here is little difference, conceptually, between simply underpaying an employee on the one hand and paying the employee in full on paper but not paying over funds that the employee had authorized to be withheld on the other.").

B.    DEFENDANT PANKNIN IS PERSONALLY LIABLE FOR ALL FRINGE
      BENEFIT CONTRIBUTIONS OWING TO THE PLAINTIFF FUNDS AS A
      RESULT OF HIS BREACH OF FIDUCIARY DUTY UNDER ERISA.

The Court must next examine whether Panknin breached his fiduciary duties. Given the foregoing analysis, it is clear that fund assets, in the form of unpaid contributions, were either diverted for other purposes or simply not paid, as a result of Panknin's personal, discretionary control and management of these assets.

Under ERISA, an employer is a fiduciary with respect to a welfare-benefit fund the extent that "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). 29 U.S.C. § 1109(a) imposes personal liability on fiduciaries as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

Finally, a fiduciary "must discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1)(A).

Panknin testified that, at all relevant times, he was the sole shareholder, officer and director of M & P. Moreover, he also admitted that he had the final say in all decisions regarding M & P, including whether fringe benefit contributions were to be paid. The record indicates that M & P hired workers to do covered work and paid them less than the

amounts set out in the CBA and trust agreement. From the moment Panknin knowingly failed to make required contributions to the Funds for these workers, he exercised control respecting disposition of plan assets, held those funds as a fiduciary, and under 29 U.S.C. § 1104(a)(1), was required to discharge his duty "solely in the interest of the participants and beneficiaries of the Funds." 29 U.S.C. § 1104(a)(1)(A); see also United States v. Panepinto, 818 F. Supp. 48, 52 (E.D.N.Y. 1993) (holding that defendants' failure to make required contributions constituted exercise of control over the disposition of employee welfare benefit plan assets under ERISA). For all of the foregoing reasons, Defendant Panknin is personally liable for the unpaid contributions due and owing to the Plaintiff Funds.[3]

C.  DEFENDANT PANKNIN HAS NOT MET HIS BURDEN OF ESTABLISHING THAT HE IS NOT LIABLE TO THE PLAINTIFF FUNDS FOR THE AUDIT AMOUNT.

Under Sixth Circuit precedent, where an ERISA fund plaintiff has provided proof of an employer's failure to pay fringe benefit contributions on behalf of its employees for

---

[3] Plaintiffs do not make a veil piercing argument. While the Court may make a veil-piercing determination as a matter of law on the current record, it is unnecessary where the language of the statute imposing liability on ERISA fiduciaries, 29 U.S.C. § 1109(a), clearly indicates that once an officer of a corporation is deemed to be a fiduciary, he may be held personally liable for any damages caused by his breach of trust. In reaching the same conclusion, one court noted, "[t]he liberal judicial interpretation of the term 'fiduciary' and the Congressionally recognized purpose of ERISA to protect the benefits of participants and beneficiaries also warrants this conclusion." Connors v. Paybra Mining Co., 807 F. Supp. 1242, 1247 (S.D.W. Va. 1992). Because the Court finds Panknin personally liable for all fringe benefit contributions owing to the Funds as a result of his breach of fiduciary duties under ERISA, it does not address his liability under various theories of corporate veil-piercing.

work covered by a collective bargaining agreement, the burden shifts to the employer to produce evidence as to what work is not covered. <u>Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.</u>, 30 F.3d 692, 696–97 (6th Cir. 1994). ERISA Section 209, 29 U.S.C. § 1059, mandates that an employer maintain records with respect to each of its employees, sufficient to determine what benefits are owing to them. The "burden-shifting" approach set out in <u>Grimaldi</u> is derived from this obligation. In that case, Grimaldi Concrete entered into a collective bargaining agreement with a laborers' union. <u>Grimaldi</u>, 30 F.3d at 693. Under the agreement, the company was "required to make payments to each of the [plaintiff] Funds for employees performing 'covered' concrete-pouring work." <u>Id.</u> at 694. Having found that Grimaldi Concrete clearly violated ERISA by failing to maintain adequate records as required by 29 U.S.C. § 1059(a)(1), the court found that "the penalty must fall upon the person who had legal responsibility to maintain those records." <u>Id.</u> at 695. The court ultimately concluded that, because it could not calculate the amount owed under the agreement on the basis of the incomplete invoice receipts, Grimaldi Concrete was liable for contributions for all hours worked. <u>Id.</u> at 695. More specifically, the court held that Grimaldi Concrete:

> provided no records at all with respect to 80% of the work performed under the collective bargaining agreement, and provided incomplete records with respect to the remaining 20%. . . . Grimaldi Concrete failed to maintain adequate records as required by Section 1059. *The burden thus shifted to Grimaldi to prove what work was covered and what was not covered.*

<u>Id.</u> at 696 (emphasis added). The <u>Grimaldi</u> court reasoned that "[a]n employer cannot escape liability for his failure to pay his employees the wages and fringe benefits due to

14

them under the law by hiding behind his failure to keep records as statutorily required."
Id. at 697 (quoting Brick Masons Pension Trust v. Industrial Fence & Supply, Inc., 839 F.2d 1333, 1338 (9th Cir. 1988)).

As set forth above, Panknin failed to produce sufficient documentation to dispute the audit. Neither he nor M & P submitted evidence showing that they provided Plaintiffs with the documentation that they are required by law to maintain. Moreover Panknin's statements in his affidavit, regarding the nature of the work for each of the individual workers, without more are insufficient to establish an issue of material fact to withstand Plaintiffs' properly supported summary judgment motion. The materials the Defendants presented to Plaintiffs were insufficient for Plaintiffs to conduct a more complete audit. Therefore, under Grimaldi, Defendants are liable to Plaintiffs in the amount of $ 154,708.98 in unpaid fringe benefit contributions determined to be owing under the audit.

## V. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiffs' April 21, 2008 Motion for Summary Judgment **[Dkt. # 76]** is GRANTED.

Let judgment be entered accordingly.

                            s/Gerald E. Rosen
                            Gerald E. Rosen, Chief Judge
                            United States District Court

Dated: April 14, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 14, 2009, by electronic and/or ordinary mail.

                s/Ruth A. Brissaud
                Case Manager
                (313) 234-5137